# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| REGGIE M. BALENTINE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>SUPERINTENDENT, )<br>)<br>Respondent. ) | CAUSE NO. 3:13-CV-991 |

## OPINION AND ORDER

This matter is before the Court on the habeas petition under 28 U.S.C. § 2254 challenging a prison disciplinary proceeding, filed by Reggie M. Balentine, a *pro se* prisoner, on September 12, 2013 (DE #1). For the reasons set forth below, the Petition (DE #1) is **DENIED**.

BACKGROUND

Balentine brings the current action challenging three prison disciplinary convictions from three separate prison disciplinary hearings, all which originate from the same set of facts and Internal Affairs investigation. In the Miami Correctional Facility, where Balentine resided at the time, Balentine was found guilty of three charges: MCF 13-07-0214, possession or use of a cell phone, Class A offense #121; MCF 13-07-0196, trafficking,

Class A offense #113; and MCF 13-07-0195, engaging in unauthorized financial transactions, Class B offense #220. Balentine exhausted his available administrative appeals with regard to the issues raised in the Petition. (DE #11, Exs.G-O, Q-T, AA-CC.)[1]

STATEMENT OF RELEVANT FACTS

There are three individual conduct reports with different information for each offense (Exs. A. K, & U). All three charges arise from one Internal Affairs investigation which was instigated after a cell phone was found within the Miami Correctional Facility where Balentine resided. *Id.* Internal Affairs Investigator Klepinger wrote all three conduct reports. *Id.* Balentine was screened for each case individually, but went through the screening process for all three cases on July 19, 2013, by the same screening officer. (Exs. B, L & V.) All three hearings were held on July 26, 2013, by Hearing Officer (H.O.) Sergeant Beemer.

**MCF 13-07-0214, possession or use of a cell phone, Class A offense #121**

Internal Affairs Investigator Klepinger wrote a conduct report that charged Balentine with class A offense 121, possession or use of a cell phone. (Ex. A.) The conduct report stated:

---

[1] All of the Exhibits referred to in this Order are attached to the Superintendent's Return, DE #11.

>On 4/29/13 Internal Affairs began an investigation into the above offender for possible possession/use of a cell phone. A cell phone had been confiscated from his cell on 4/28/13. Balentine's cellmate claimed ownership of the phone, however, information was received that the phone actually belonged to Balentine. The phone was removed from evidence for further investigation. Balentine denied ownership of the phone however there were e-mail, Facebook, and Twitter accounts located on the phone that belong to him. There were also photos and a video of Balentine in his cell that were sent out from the phone. There were numerous incoming and outgoing calls found on the call log that were made to people listed on Balentine's offender phone list and/or visit list.
>
>The investigation determined that the phone did belong to Balentine. See IA Case #13-MCF-0050[.]

*Id.*

On July 19, 2013, Balentine was notified of the charge when he was served with the conduct report and the screening report. (Exs. A-B.) Balentine was notified of his rights, he pled not guilty, and he requested the appointment of a lay advocate. (Ex. B.) Balentine requested one witness statement from Tyron Gibbs and a review of the evidence and "[f]ingerprint the phone." *Id.* Hearing Officer, Sergeant Beemer, wrote a summary of the evidence contained in the Internal Affairs file stating:

>*On the date of (sic) 07/22/2013[,] [t]he evidence in the case of offender Balentine, Reggie D[OC]#971707 is being reviewed this is the summary of requested evidence to be viewed.*
>*On the [p]hone:*
>*There are pictures of offender Balentine in his cell on the phone[.]*
>*There is a video of offender Balentine (sexual in nature) on his bunk sent to a [ ].*

3

> *G-mail account/address [] on the phone along with a twitter account with twitter messages from offender Balentine's brother [].*
> *Cell phone reports show text messages and cell phone calls to/from multiple visitors on offender Balentine's phone list.*
> *Subpoena reports from green dot numbers[.]*
> *Green dot holders name's (sic) on offender Balentine's phone list[.]*
> *Report of a 3 way call made by offender Balentine[.]*
> *Offender Balentine requested the evidence in his case be reviewed due to safety and security reasons this offender cannot see the video, photos, or case files; offender will receive a copy of this summary of evidence[.]*

(Ex. C, italics in original.) Offender Gibbs' witness statement was, "Mr[.] Balentine did not own or [p]oss[ess] the cell phone the cell phone did [b]elong to me[.]" (Ex. D.)

On July 26, 2013, the H.O. conducted the prison disciplinary hearing and found Balentine guilty of Class A offense 121, possession or use of a cell phone. (Ex. F.) The sanctions recommended and approved were an earned credit time loss of 150 days, a credit class demotion from credit class I to II, 120 days in disciplinary segregation, a 45 day loss of telephone and commissary privileges and a written reprimand. *Id.* These sanctions were imposed because of the seriousness of the offense, the offender's attitude and demeanor during the hearing and the likelihood the sanctions would have a corrective effect on the offender's future behavior. *Id.* In making this determination, the H.O. relied on the staff reports, the witness statement, the

4

summary of evidence and Balentine's statement at the hearing, "[t]he phone does not belong to me. I can't deny I used the phone. I think it should stay the B207. That's what I was put in SCU for." *Id.* The Petitioner appealed unsuccessfully. (Exs. G-I.)

**MCF 13-07-0196, trafficking, Class A offense #113**

Internal Affairs Investigator Klepinger wrote a second conduct report that charged Balentine with class A offense 113, trafficking. (Ex. K.) The conduct report stated:

> On 4/29/13 Internal Affairs began an investigation into the above offender for possible possession/use of a cell phone. A cell phone had been confiscated from his cell on 4/28/13. Balentine's cellmate claimed ownership of the phone, however, information was received that the phone actually belonged to Balentine. The phone was removed from evidence for further investigation. While reviewing the contents of the phone numerous text message conversations were found that had several series of numbers, appearing to be Money Pak numbers for Green Dot cards, in them along with amounts of money that each number should be for. There was conversation about "loading" the numbers, which means to upload the money onto a permenant [sic.] card. The phone was sent to the State Police lab for a full report and case was opened for possible trafficking. Once the report was returned there was a substantial amount of information to indicate trafficking. There were text messages with Money Pak numbers, conversations discussing when/where contraband could be exchanged, amounts of money contraband costs, money transactions to a former Aramark worker, and several other indicators. Balentine denied ownership of the phone however there were e-mail, Facebook, and Twitter accounts located on the phone that belong to him.

5

> There were also photos and a video of Balentine in his cell that were sent out from the phone. Information gathered during the investigation substantiates that Balentine was involved in Trafficking at MCF. Information was also discovered that Balentine had a staff contact that was bringing the contraband into the facility to him. Subpoenas were issued for further infromation [sic.] on who the Green Dot Card account holder were that the Money Pak numbers were loaded onto. This information provided further evidence that Balentine was engaged in Trafficking.

*Id.*

On July 19, 2013, Balentine was notified of the charge when he was served with the conduct report and the screening report. (Exs. K-L.) Balentine was notified of his rights, he pled not guilty and he requested the appointment of a lay advocate. (Ex. L.) Balentine requested one witness statement from Tyron Gibbs and a review of the evidence and "Green Dot Confirmation." *Id.* Hearing Officer, Sergeant Beemer, wrote a summary of the evidence contained in the Internal Affairs file and the summary is the same for all three cases as stated *supra*. (Ex. M.) Offender Gibbs' witness statement said, "I never see [sic.] or knew anything about Mr. Balentine Traficing [sic.] at all the only thing he ever did is play cards and eat." (Ex. N.)

On July 26, 2013, the H.O. conducted the prison disciplinary hearing and found Balentine guilty of Class A offense 113, trafficking. (Ex. P.) The sanctions recommended and approved were an earned credit time loss of 120 days, a credit class demotion

6

from credit class II to III, 120 days in disciplinary segregation, a 45 day loss of telephone and commissary privileges and a written reprimand. *Id.* These sanctions were imposed because of the seriousness of the offense, the offender's attitude and demeanor during the hearing and the likelihood the sanctions would have a corrective effect on the offender's future behavior. *Id.* In making this determination, the H.O. relied on the staff reports, the witness statement, the summary of evidence and Balentine's statement at the hearing that "I have never traffic [sic.] anything they have never found anything on me. That was Gibbs phone not me. There was no greendots [sic.] either." *Id.* The Petitioner appealed unsuccessfully. (Exs. Q-T.)

**MCF 13-07-0195, engaging in unauthorized financial transactions, Class B offense #220**

Internal Affairs Investigator Klepinger wrote a third conduct report that charged Balentine with class B offense 220, engaging in unauthorized financial transactions. (Ex. U.) The conduct report stated:

> On 4/29/13 Internal Affairs began an investigation into the above offender for possible possession/use of a cell phone. A cell phone had been confiscated from his cell on 4/28/13. Balentine's cellmate claimed ownership of the phone, however, information was received that the phone actually belonged to Balentine. The phone was removed from evidence for further investigation. While reviewing the contents of the phone numerous text message conversations were found that had several series of numbers, appearing to be Money Pak numbers for Green Dot cards, in them along with

7

> amounts of money that each number should be for. There was conversation about "loading" the numbers, which means to upload the money onto a permenant [sic.] card. The phone was sent to the State Police lab for a full report.
>
> Once the phone report was returned a list of the potential Money Pak numbers was sent to Green Dot for confirmation. All numbers were confirmed by Green Dot and amounts of money loaded onto them was also provided. It is against MCF policy for these transactions to take place amongst offenders.

*Id.*

On July 19, 2013, Balentine was notified of the charge when he was served with the conduct report and the screening report. (Exs. U-V.) Balentine was notified of his rights, he pled not guilty and he requested the appointment of a lay advocate. (Ex. V.) Balentine requested one witness statement from Tyron Gibbs and a review of the evidence and "Green Dot Confirmation." *Id.* Hearing Officer, Sergeant Beemer, wrote a summary of the evidence contained in the Internal Affairs file and the summary for all three cases was the same as stated *supra.* (Ex. W.) Offender Gibbs' witness statement was "I never seen him with any Green dot # or have anything to do with them." (Ex. X.)

On July 26, 2013, the H.O. conducted the prison disciplinary hearing and found Balentine guilty of Class B offense 220, engaging in unauthorized financial transactions. (Ex. Z.) The sanctions recommended and approved were an earned credit time loss of 30 days, 30 days in disciplinary segregation, a 30 day loss of

8

telephone and commissary privileges and a written reprimand. *Id.* These sanctions were imposed because of the seriousness of the offense, the offender's attitude and demeanor during the hearing and the likelihood the sanctions would have a corrective effect on the offender's future behavior. *Id.* In making this determination, the H.O. relied on the staff reports, the witness statement, the summary of evidence and Balentine's statement at the hearing "[g]reen dots were not in my name. I didn't do anything with green dots." *Id.* The Petitioner appealed unsuccessfully. (Ex. AA-CC.) The present action ensued.

DISCUSSION

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455

9

(1985).

Balentine states four grounds for relief in his petition, but they can be boiled down to two main claims. The first is there was insufficient evidence to support the charge of trafficking and that he owned the phone. (DE #1, p. 4-5.) In assessing the sufficiency of the evidence, the relevant standard is whether there is "some evidence" to support the guilty finding. *Hill*, 472 U.S. at 457. The court will not "conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). A guilty finding will be overturned only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

In this case, regarding the claim under case number MCF 13-07-0214, for unauthorized use of a cell phone, the H.O. reviewed the evidence in the case and found when the cell phone was examined, Balentine's e-mail, Facebook, and twitter accounts were found on the phone. (Exs. A, C & F.) Additionally, there were photos and an explicit video of Balentine on his bunk that were found to have

been sent out from the phone. *Id.* There were also ingoing and outgoing calls found on the call log made to people listed on Balentine's offender phone list and/or visit list. (Ex. A.) Moreover, Balentine admitted to using the cell phone during the hearing, stating, "I can't deny I used the cell phone," and merely argued he should have been found guilty of a lesser B offense instead of the A 121 offense. (Ex. F.) As such, there was sufficient evidence to find Balentine guilty of using the cell phone in an unauthorized manner. Even if the phone belonged to his cellmate, as Balentine claims, Balentine was found guilty for unauthorized *use or possession* of a cell phone, not owning one.

Regarding the claim under case number MCF 13-07-0196, for the Class A offense of trafficking, there was also substantial evidence to support the charge. There were "text messages with Money Pak numbers, conversations discussing when/where contraband could be exchanged, amounts of money contraband costs, money transactions to a former Aramark worker, and several other indicators." (Ex. K.) "Information was also discovered that Balentine had a staff contact that was bringing the contraband into the facility to him." *Id.* Finally, after the subpoenas were issued, investigators discovered "who the Green Dot Card account holders were" and how much money had been "loaded onto" each Money Pak number. *Id.*

Lastly, regarding the claim under case number MCF 13-07-0195, engaging in unauthorized financial transactions, again, there was

11

sufficient evidence to find Balentine guilty. The same evidence goes to support this charge. Additionally, after an examination by the Indiana State Police Lab, there were multiple text conversations which included series of numbers that appeared to be Green Dot cards and information about what monetary amounts should be placed on which card. (Ex. U.) There were also discussions about "loading" money onto the cards and "[a]ll numbers were confirmed by Green Dot and amounts of money loaded onto them was also provided." *Id.* It is against MCF policy for these transactions to take place among offenders. *Id.*

The statement made by Balentine's cellmate, Gibbs, that the phone belonged to him, does not help Balentine. Circumstantial evidence is sufficient to support a guilty finding in a disciplinary proceeding. *See Hamilton*, 976 F.2d at 345-46. The record need not contain evidence of actual possession of contraband, as long as there is sufficient evidence of constructive possession. *Id.* (evidence of possession was sufficient in disciplinary case, since contraband was found in a location where only the petitioner and three other cellmates could have left it); *see also Pigg v. Finnan,* 289 Fed. Appx. 945, 947 (7th Cir. Aug. 18, 2008) ("When only a few inmates have access to the place contraband is found, constructive possession is 'some evidence' sufficient to sustain a disciplinary conviction."). There is sufficient circumstantial evidence of Balentine's possession of the phone in

this case. *See Hill*, 472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.").

Balentine's second claim is that the charges are "duplicative," or that they were "stacked." (DE #1, pp. 4-5.) The collateral review envisioned by § 2254 focuses on violations of the Constitution, laws, and treaties of the United States. *See Bell v. Duckworth*, 861 F.2d 169 (7th Cir. 1988). Yet this claim is based upon the rules and procedures of the Indiana Department of Correction. The DOC policies and procedures are created under the authority of state law, and violations of state law do not entitle prisoners to habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, violations of the ADP do not state a claim for federal habeas relief. *Hester*, 966 F.Supp. at 774-75. Therefore, to the extent Petitioner relies on violations of the ADP or other DOC policies as grounds for his Petition, relief is not proper.

CONCLUSION

For the reasons stated above, the petition (DE #1) is **DENIED**.

DATED: July 7, 2014                    /s/ RUDY LOZANO, Judge
                                       **United States District Court**